IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| CHRISTOPHER W. ELBRECHT | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) CIV. NO.: 1:08-cv-00021 |
| CARAMBOLA PARTNERS, LLC, | ) |
| JS CARAMBOLA, LLP, JAMES M. PULS, | ) |
| JOHN PULS, and LARRY VAUGHN | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Finch, Senior Judge

## I. Introduction

This matter comes before the Court on Plaintiff Christopher Elbrecht's ("Plaintiff") Motion for Partial Summary Judgment against Defendant Carambola Partners, LLC ("Defendant" or "Carambola Partners"). Plaintiff contends that Defendant breached their Reservation Agreement for the purchase of a condominium at the Carambola Beach Resort when it refused to return to him a deposit, accrued interest and a "Cancellation Fee" after he gave notice of termination of the agreement. Defendant claims that Plaintiff never gave proper notice of termination, that even if he did, it is still entitled to a "reasonable" amount of time in which to return his funds and that what constitutes a reasonable amount of time is a material question of fact for a jury. After reviewing the Amended Complaint, briefs and documents submitted by the parties, the Court finds that Defendant has not raised a question of material fact on Plaintiff's

breach of contract cause of action. Accordingly, the Court grants summary judgment in favor of Plaintiff on his breach of contract claim.

## II. Facts[1]

On or about April 5, 2006, Thcerble, LP entered into a Reservation Agreement with Carambola Partners concerning the purchase of a condominium unit at the "Carambola Beach Resort" located at Estate Teague Bay, St. Croix, U.S. Virgin Islands. (Pl.'s Statement of Fact ("SF") ¶ 3; Def.'s Counter-Statement of Facts ("CSF") ¶ 3.) In the Reservation Agreement, Carambola Partners represented that JS Carambola was the owner of the Carambola Beach Resort and was engaged in the renovation and conversion of that resort into a residential condominium project to be known as the Carambola Beach Resort Condominium. (SF ¶ 4; CSF ¶ 4.) According to the Reservation Agreement, Carambola Partners had entered into an agreement with JS Carambola to purchase certain of the condominium units. (SF ¶ 4; CSF ¶ 4.) Pursuant to the Reservation Agreement, Thcerable, LP deposited $310,000 with Carambola Partners for the purchase of one of the condominium units. (SF ¶ 5; CSF ¶ 5.) The Reservation Agreement contemplates that, at some point after the making of the deposit, the Prospective Purchaser (Thcerable, LP) and Carambola Partners may enter into a "Purchase and Sale Agreement" for the purchase of one of the condominium units. (Reservation Agreement ¶ 2.)

Paragraph 5 of the Reservation Agreement forms the heart of this litigation and provides that:

---

[1] The Court commends both Plaintiff and Defendant for filing thorough Separate Statements of Material Facts in compliance with Local Rule of Civil Procedure 56.1.

> This Reservation Agreement may be terminated by either party upon written notice to the other party at any time prior to the execution by the parties hereto of the Purchase and Sale Agreement. In the event of such termination, the Prospective Purchaser is entitled to a refund in full of the Deposit, plus all accrued interest thereon, plus an additional amount (the "Cancellation Fee") which, when added to the Deposit and any interest accrued thereon, equals the aggregate sum of $425,000.00 U.S. The refund of the Deposit, plus any accrued interest thereon (determined through the date of payment in accordance with Section 3 hereinabove) and the Cancellation Fee, shall be paid by the Seller to the Prospective Purchaser on or before the one (1) year anniversary of the Effective Date.[2]

(Reservation Agreement ¶ 5; SF ¶ 6; CSF ¶ 6.)[3]

On October 25, 2006, Thcerble, LP sent a letter to Defendant indicated that it had "decided to terminate the reservation agreement pursuant to item 5" and asking for a "refund, including initial investment and cancellation fee, of $425,000." (Letter from April Elbrecht to James Puls, dated October 25, 2006 ("October 25, 2006 Letter"), attached as Exhibit 2 to Amended Complaint; SF ¶ 7; CSF ¶ 7.) Carambola Partners refused to refund the deposit and pay the accrued interest and cancellation fee, citing the one year anniversary provision of paragraph 5 of the Reservation Agreement. (SF ¶ 8; CSF ¶ 8.)

On February 7, 2007, Defendant sent Thcerble, LP a letter representing that it had "secured Marriot Renaissance to be the official flagship hotel operator for the Carambola Beach Resort" and that Marriot's confidence and commitment would increase the overall marketability

---

[2] The "Effective Date" is defined in the preamble of the Reservation Agreement as April 5, 2006.
[3] Both parties cite extensively to the Reservation Agreement, Amendment to the Reservation Agreement, October 25, 2006 Letter, and February 7, 2007 Letter. Accordingly, the Court will consider them in determining Plaintiff's Motion for Partial Summary Judgment. *See Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) (If a party fails to object before the [trial] court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the [trial] court's consideration of such materials are deemed to have been waived."); *Casas Office Machs., Inc. v. Mita Copystar Am., Inc*., 42 F.3d 668, 682 (1st Cir. 1994) ("Unless a party moves to strike an affidavit under Rule 56(e), any objections are deemed waived and a court may consider the affidavit").

3

of the individual hotel-condo units. (*See* February 7, 2007 Letter, attached as Ex. 3 to Amended Complaint; SF ¶ 9; CSF ¶9.) In the letter, Defendant also stated that it was twelve months behind schedule and requested a nine month extension on the Reservation Agreement in exchange for an immediate "interest payment" of $31,000 "for these past twelve months" and, "moving forward," a 10% interest "per annum on your initial deposit for the next nine months." (February 7, 2007 Letter; SF ¶ 10; CSF ¶ 10.) In reliance on the representations made by Defendant in the February 7, 2007 letter, Thcerble, LP consented to the proposed amendment to the Reservation Agreement. (SF¶ 11; CSF ¶ 11.) On or about March 20, 2007, the parties entered into an "Amendment to Reservation Agreement" which incorporated the "terms and conditions outlined in the 2/8/07 attached letter . . . All other terms and conditions of the existing reservation agreement will apply." (Amendment to Reservation Agreement, attached as Ex. 4 to Amended Complaint; SF ¶ 11; CSF ¶ 11.)[4] In July 2007, with the written consent of Defendant, Thcerble, LP assigned the Reservation Agreement to Plaintiff. (SF ¶¶ 12-13; CSF ¶¶ 12-13; Letters Dated June 14, 2007 and July 2, 2007, attached as Exs. 5 and 6 to Amended Complaint.)

Pursuant to the Reservation Agreement, as amended, Plaintiff's right to receive the return of the deposit, accrued interest, and the cancellation fee matured on January 5, 2008. (SF ¶ 14; CSF ¶ 14; Amended Complaint ¶ 18; Answer to Amended Complaint ¶ 18.) On January 24, 2008, Plaintiff, through counsel, sent a letter to Defendant demanding return of his deposited

---

[4] The Court surmises that the "2/8/07 attached letter" referred to in the Amendment to Reservation Agreement is the February 7, 2007 Letter submitted by the parties. Because neither party raised this issue, the Court does not consider it pertinent to this motion. *See, e.g., Compass Technology, Inc. v. Tseng Laboratories, Inc.*, 71 F.3d 1125, 1132 (3d Cir. 1995) (citation omitted) (litigants must raise ambiguities in contract themselves for court to consider them); *Hubert v. Islands Mech. Contr.*, 2010 U.S. Dist. LEXIS 56743, at *4, n.2 (D.V.I. June 9, 2010) (Finch. J.) (finding typographical error in employment contract immaterial because neither party raised error).

4

funds. (SF ¶ 15; CSF ¶ 15; Amended Complaint ¶ 19; Answer to Amended Complaint ¶ 19.) Defendant has not returned the deposit, accrued interest or Cancellation Fee to Plaintiff. (Affidavit of Christopher Elbrecht in Support of Motion for Partial Summary Judgment ¶ 16, Doc. 15-2.)

### III. Discussion

#### a. Standards on a Motion For Summary Judgment

"It is a fundamental principle of contract law that disputes involving the interpretation of unambiguous contracts are resolvable as a matter of law, and are, therefore, appropriate cases for summary judgment." *Tamarind Resort Assocs. v. V.I.*, 138 F.3d 107, 110 (3d Cir. 1998) (citations omitted); *Reed, Wible and Brown, Inc. v. Mahogany Run Development Corp.*, 550 F.Supp. 1095, 1099 (D.V.I. 1982) ("Disputes involving the interpretation of unambiguous contracts are resolvable as a matter of law, and are, therefore, appropriate cases for summary judgment." (citing *Par-Knit Mills v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir.1980))).

"Summary judgment is proper where the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Nicini v. Morra*, 212 F.3d 798, 805-806 (3d Cir. 2000) (en banc); *see also* Fed. R. Civ. Proc. 56. "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which that party has the burden of proof, the moving party is

entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual dispute is deemed genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing the evidence, the court must give the nonmoving party the benefit of all reasonable inferences. *Bray v. Marriott Hotels*, 110 F.3d 986, 989 (3d Cir. 1997).

### b. Defendant Breached the Reservation Agreement by Failing to Pay Plaintiff the Deposit, Accrued Interest, and Cancellation Fee on or Before January 5, 2008

To succeed on a breach of contract claim under Virgin Islands law,[5] a plaintiff must prove four elements: "(1) an agreement, (2) a duty created by that agreement, (3) a breach of that duty, and (4) damages." *Arlington Funding Services, Inc. v. Geigel*, 51 V.I. 118, 135 (V.I. 2009) (citing *Galt Capital, LLP v. Seykota*, 2007 U.S. Dist. LEXIS 53199, *6 (D.V.I. 2007); *see also* Restatement (Second) of Contracts § 235 ("When performance of a duty under a contract is due any non-performance is a breach.").

The parties do not dispute that they entered into the Reservation Agreement (SF ¶ 3; CSF ¶ 3; Reservation Agreement), and that on October 25, 2006, Plaintiff sent Defendant a letter indicating that he wished to terminate the Reservation Agreement and collect his deposit and Cancellation Fee. (October 25, 2006 Letter; SF ¶ 7; CSF ¶ 7.) The parties also agree that, in March 2007, they amended the Reservation Agreement whereby they agreed to extend the one

---

[5] Paragraph 16 of the Reservation Agreement contains a choice of law clause that states: "This Reservation Agreement shall be construed and regulated under and by the laws of the United States Virgin Islands." The Virgin Islands code provides that "the rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary." 1 V.I.C. § 4 (2010).

year payment deadline by nine months to January 5, 2008 but agreed that "[a]ll other terms and conditions of the existing reservation agreement will apply." (Amendment to Reservation Agreement; SF ¶ 11; CSF ¶ 11.)

The parties disagree as to the effect of that Amendment. Plaintiff claims that under the Amended Reservation Agreement, Defendant was required to pay him his deposit, accrued interest, and Cancellation Fee on or before January 5, 2008. Defendant admits that January 5, 2008 was "the undisputed date on which [Defendant] was obligated to return Plaintiff's monies due if [Defendant] had received a termination letter prior to that date." (Def.'s Opp. at 11-12.) However, Defendant argues that the March 2007 Amendment to the Reservation Agreement "effectively constituted a withdrawal of Plaintiff's October 25, 2006, notice of termination of the Reservation Agreement." (*Id*. at 10.) Defendant argues that because Plaintiff never gave notice of termination prior to January 5, 2008, it was not obligated to return his funds on that date. (*Id*. at 12.)

"Under the law of the Virgin Islands, interpretation of an integrated agreement is to be determined as a question of law by the court if it does not depend on the credibility of extrinsic evidence or a choice of reasonable inferences to be drawn from extrinsic evidence. Any determination as to meaning should be made in light of the relevant evidence, but after the transaction has been examined in its entirety, the words of an integrated agreement are the most important evidence of intention.[6] It is axiomatic that where the language of a contract is clear and unambiguous, it must be given its plain meaning." *Tamarind Resort Assocs.* 138 F.3d at 110. "A contract is unambiguous if it is reasonably capable of only one construction." *Id*. at 110-11.

---

[6] The Reservation Agreement contains an integration clause. (*See* Reservation Agreement ¶ 15.)

Here, the language of the Reservation Agreement and the Amendment to the Reservation Agreement, including the incorporated February 7, 2007 Letter, supports only one reasonable construction – that Defendant was obligated to return Plaintiff's monies on or before January 5, 2008.[7] Defendant acknowledges that the March 2007 Amendment to the Reservation Agreement was a nine-month extension of the one year payment provision of paragraph 5 of the Reservation Agreement. (Def.'s Opp. at 9; CSF ¶¶ 10-11.) The impetus for this Amendment was the fact that, in October 2006, Plaintiff had sent notice of termination of the Reservation Agreement, requiring Defendant to return his monies on or before April 5, 2007. (SF ¶ 8; CSF ¶ 8.) Thus, at the time the parties entered into the Amendment to the Reservation Agreement, Defendant was already obligated to pay Plaintiff his deposit, accrued interest, and Cancellation Fee. The Amendment to the Reservation Agreement merely extended the April 5, 2007 due date by nine months, to January 5, 2008.

Defendant argues that "when the parties agreed to extend the terms of the Reservation Agreement for nine months, such renegotiation effectively constituted a withdrawal of Plaintiff's October 25, 2006, notice of termination of the Reservation Agreement." (CSF ¶ 16(b).) Defendant's alleged support for this crucial (and dispositive) factual contention is the Amendment to the Reservation Agreement and the incorporated February 7, 2007 Letter. (*Id.*) Defendant argues that "[t]he terms of the Reservation Agreement and the Amendment to the Reservation Agreement are clear, and nowhere does either contain language stating that Plaintiff

---

[7] The Amendment to the Reservation Agreement incorporates the February 7, 2007 Letter. (Amendment to Reservation Agreement.) Because the terms of the February 7, 2007 Letter were incorporated in the Amendment to the Reservation Agreement, they are an intrinsic part of the agreement and thus fertile ground for the Court's consideration on this motion for summary judgment.

8

is "due" anything upon expiration of the nine-month extension." (Def.'s Opp. at 9.) However, the evidence refutes Defendant's claim.

The February 7, 2007 Letter contains a table illustrating the total amount of money that would be due to Plaintiff at the end of the nine month extension and states as follows:

| Deposit | $310,000.00 | Initial Deposit *due after 9 month extension* |
|---|---|---|
| Cancellation Fee | $125,000.00 | Cancellation Fee *due after 9 month extension* |
| 10% for next 9 months | $23,250 | Based on 10% per annum of $310,000 for upcoming 9 months |

(February 7, 2007 Letter) (emphasis added).

The twice repeated phrase "due after 9 month extension" flatly contradicts Defendant's claim that the Amendment to the Reservation Agreement contains no "language stating that Plaintiff is due anything upon expiration of the nine-month extension." This phrase indicates that Plaintiff's deposit, accrued interest, and Cancellation Fee became immediately due after the nine-month extension; no further notice of termination by Plaintiff was required. This is further supported by Defendant's statement in the February 7, 2007 Letter that "we expect that you will be purged from your current reservation agreement *within* the nine month extension. In addition, we are currently in the process of obtaining additional commercial financing for this project and if necessary, we will be able to use these funds to satisfy the terms and conditions of your reservation agreement." (February 7, 2007 Letter) (emphasis added). This statement about "purging" Plaintiff's reservation agreement and obtaining additional funds to satisfy Plaintiff's reservation agreement shows that Defendant was anticipating paying plaintiff $458,250 during or immediately after the nine-month extension and lends no support to a further notice requirement.

9

The context in which the parties negotiated the nine-month extension to the Reservation Agreement combined with the "due after 9 month extension" language in the February 7, 2007 Letter provides unambiguous proof that the Amendment to the Reservation Agreement required Defendant to return Plaintiff's funds on or before January 5, 2008. *See* Restatement (Second) of Contracts § 202 ("In interpreting the words and conduct of the parties to a contract, a court seeks to put itself in the position they occupied at the time the contract was made."). The purpose of the Reservation Agreement was to secure Plaintiff an option to purchase one of the yet to be built condominiums at the Carambola Beach Resort Condominium project. (SF ¶¶ 3-5; CSF ¶¶ 3-5.) Plaintiff was only entitled a return of his deposit if he provided a notice of termination to Defendant. (SF ¶¶ 6; CSF ¶¶ 6.) However, the February 7, 2007 Letter states that the Deposit and Cancellation Fee are "due after 9 month extension." If the Amendment to Reservation Agreement constituted a withdrawal of Plaintiff's prior notice of termination, he would not have been due his deposit after the nine-month extension as the Reservation Agreement contemplates that the $310,000 was ultimately to be used for purchase of a condominium. (Reservation Agreement ¶ 2.) That the February 7, 2007 Letter states that Plaintiff's deposit and Cancellation Fee are "due after 9 month extension" is proof that the parties intended that these funds be returned to Plaintiff after the nine-month extension, i.e. on or before January 5, 2008. *Reed, Wible and Brown, Inc*, 550 F.Supp. at 1099 ("[T]he subjective intent of the parties to a contract is immaterial. They are bound only by their objective manifestations."); Restatement (Second) of Contracts § 212, com. b. ("[T]he words of an integrated agreement remain the most important evidence of intention.").

Lacking any contractual language to support its withdrawal of notice contention, Defendant's theory can only be supported if withdrawal of the termination notice can somehow

be inferred.  However, in evaluating a motion for summary judgment "a court is required to indulge only reasonable inferences." *GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 210 (3d Cir. 2001); *see Eastman Kodak Co. v. Image Technical Services, Inc.* 504 U.S. 451, 468, (1992) (noting that in opposing summary judgment, "the nonmoving party's inferences [must] be reasonable in order to reach the jury."). Here, the inference sought by Defendant – that the Amendment to the Reservation Agreement constitutes a withdrawal of Plaintiff's notice of termination – conflicts with the language of the Amendment itself (i.e. "due after 9 month extension") and is therefore unreasonable. Restatement (Second) of Contracts § 203(a) ("[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect.") Furthermore, the requirement of a second termination notice would add an additional term that does not appear in the contract. *See Fields v. Thompson Printing Co., Inc.* 363 F.3d 259, 271 (3d Cir. 2004) ("[C]ourts are obligated to enforce contracts as they are made by the parties and not to create additional terms out of thin air." (citing *Marchak v. Claridge Commons, Inc.*, 633 A.2d 531 (N.J. 1993))).

The Court finds that Plaintiff has presented sufficient evidence to show that there are no material questions of fact regarding his breach of contract claim and that he is therefore entitled to summary judgment on this claim.

### c. Damages, Prejudgment and Postjudgment Interest

According to the Restatement, "[c]ontract damages are ordinarily based on the injured party's expectation interest and are intended to give him the benefit of his bargain by awarding him a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been performed." Restatement (Second) of Contracts § 347. In the

Virgin Islands, an "[a]ward of prejudgment interest is permitted on all monies which have become due." *See Antilles Ins. v. James*, 30 V.I. 230, 256 (D.V.I. App. Div. 1994) (citing 11 V.I.C. 951(a)(1)). While awarding prejudgment interest is discretionary, it should "ordinarily be granted unless exceptional or unusual circumstances exist making the award of interest inequitable." *Skretvedt v. E.I. Dupont de Nemours*, 372 F.3d 193, 208 (3d Cir. 2004) (quotation marks and citation omitted); *see also Booker v. Taylor Milk Co.*, 64 F.3d 860, 868 (3d Cir. 1995) ("To fulfill this make-whole purpose, prejudgment interest should be given in response to considerations of fairness and denied when its exaction would be inequitable." (internal quotation marks and citation omitted)). Here, the equities weigh in favor of awarding prejudgment interest as Plaintiff has been without his money for over two and a half years. *See Addie v. Kjaer*, 2009 U.S. Dist. LEXIS 72137, at *11 (D.V.I. Aug. 14, 2009) (finding that equities weighed heavily in favor of awarding prejudgment interest in breach of contract action because plaintiff had been deprived of money for five years).

In this case, the parties agree that if judgment is entered on Plaintiff's breach of contract claim, his damages are $458,250. (Pl.'s Reply at 9; Def.'s Opp. at 15, n.2.) The parties disagree on prejudgment interest. Plaintiff claims that he is entitled to prejudgment interest beginning on January 5, 2008 at the rate of 6% on his $310,000 deposit and 9% on $148,250 ($125,000 Cancellation Fee plus 10% accrued interest on his deposit for nine months ($23,250)). (*See* February 7, 2007 Letter.) Plaintiff argues that while the Reservation Agreement specifies a 6% rate on the deposit, it does not provide an interest rate on the Cancellation Fee and accrued interest and he is therefore entitled to 9% interest under 11 V.I.C. § 951(a)(4). Defendant claims

that Plaintiff is only entitled to 6% interest on the entire judgment from the date of the breach because that rate is specified in the Reservation Agreement.[8]

On a breach of contract claim, prejudgment interest accrues at the rate of interest specified in the contract, or if no rate is specified, at a statutory rate of 9%. 11 V.I.C. § 951(a)(4) ("The rate of interest shall be nine (9%) per centum per annum on . . . money due or to become due where there is a contract and no rate is specified."). Here, paragraph 3 of the Reservation Agreement provides that "the Deposit shall accrue interest at the rate of 6% per annum." Accordingly, the deposit ($310,000) and the unpaid accrued interest on the deposit ($23,250) accrue prejudgment interest from the date of the breach at 6% per annum. The Reservation Agreement does not provide for interest on the Cancellation Fee. Indeed, the table contained in the February 7, 2007 Letter makes it clear that Plaintiff does not accrue interest on the $125,000 Cancellation Fee during the pendency of his Reservation Agreement. The Court finds that the Reservation Agreement does not "specify" the interest rate on the Cancellation Fee within the meaning of 11 V.I.C. § 951(a)(4). Plaintiff is therefore entitled to 9% interest on the $125,000 Cancellation Fee per annum from the date of the breach – January 5, 2008 – as this is the date that Defendant should have returned the Cancellation Fee.

Plaintiff is entitled to postjudgment interest at the rate of 4% per annum on this judgment to the date that it is satisfied. *See* 5 V.I.C. § 426 ("The rate of interest on judgments and decrees for the payment of money shall be 4 percent per annum."); *Christian v. Joseph*, 15 F.3d 296, 299

---

[8] Defendant also claims that Plaintiff is due no prejudgment interest because the date of the breach, if any, is an issue of fact for the jury. However, the Court has dispensed with this argument in Section III(b).

(3d Cir. 1994) (holding that under Virgin Islands law, "the accrual of post-judgment interest . . . [is] automatic on money judgments rendered under territorial law.").

## IV.  Conclusion

For the foregoing reasons, the Court concludes that summary judgment should be granted in favor of Plaintiff as to his breach of contract claim against Defendant Carambola Partners. Accordingly, it is hereby

**ORDERED** and **ADJUDGED** that Plaintiff's Motion for Summary is **GRANTED** in the amount of $458,250;

**ORDERED** and **ADJUDGED** that prejudgment interest shall accrue beginning on January 5, 2008 to the date of this judgment at the rate of 6% per annum on $333,250 of Plaintiff's Judgment and 9% per annum on the remaining $125,000 pursuant to 11 V.I.C. § 941(a)(4);

**ORDERED** and **ADJUDGED** that postjudgment interest shall accrue on Plaintiff's breach of contract claim at the rate prescribed by 5 V.I.C. § 426 from the date of this judgment until satisfied by Defendant.

ENTERED this 16th day of July, 2010.

_____/s/_____
HONORABLE RAYMOND L. FINCH
SENIOR U.S. DISTRICT JUDGE